United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re EVLON AND NATASHA CHARLES, | § § § | |
| Debtors. | § § | |
| | § | CIVIL ACTION NO. 4:21-CV-2061 |
| | § | |
| EVLON AND NATASHA CHARLES, | § | BANKRUPTCY CASE NO. 20-34377 |
| | § | |
| Appellants. | | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal. The appellants are the husband-and-wife debtors in a Chapter 13 bankruptcy who filed proofs of claim regarding the wife's student loan debt. The bankruptcy court sustained an objection to the proofs of claim filed by one of the debtors' unsecured creditors, and the debtors have appealed. The Court **AFFIRMS** the bankruptcy court's judgment.

### I.    BACKGROUND

Evlon and Natasha Charles ("the Charleses") filed a joint Chapter 13 bankruptcy petition in August of 2020. (Dkt. 2 at pp. 11, 17). The proof-of-claim filing deadline for governmental units was March 1, 2021, but the proof-of-claim filing deadline for all other creditors was November 9, 2020. (Dkt. 2 at pp. 23, 380). Accordingly, the deadlines for the Charleses to file proofs of claim on creditors' behalf were April 1, 2021 for governmental units and December 9, 2020 for all other creditors. *See* Fed. R. Bankr. P. 3004.

When she was in college, Natasha Charles took out federal student loans. No entity filed proofs of claim in the Charleses' bankruptcy proceeding relating to Natasha's student loan debt, so the Charleses themselves filed proofs of claim for that debt on March 26, 2021 and amended those proofs of claim on March 30, 2021. (Dkt. 2 at pp. 393–416). The proofs of claim listed "USDOE/GLELSI" as the creditor; the abbreviations stand for "United States Department of Education/Great Lakes Educational Loan Services, Inc." (Dkt. 2 at pp. 393–416). As supporting documentation, the proofs of claim included "account details" printouts from the website of the loan servicer, Great Lakes Educational Loan Services, Inc. ("Great Lakes"). (Dkt. 2 at pp. 396–99, 403–06, 410–11, 415–16).

One of the Charleses' unsecured creditors, United Community Bank ("UCB"), objected to the proofs of claim relating to Natasha's student loan debt. (Dkt. 2 at pp. 258–65). In its objection, UCB argued that those proofs of claim were untimely filed. (Dkt. 2 at p. 259). The bankruptcy court sustained UCB's objection. (Dkt. 2 at pp. 266–67). In his order, the bankruptcy judge held that "[t]here [wa]s no evidence that either of the claims were for a governmental unit as the attached account statements in support of each claim were from Great Lakes." (Dkt. 2 at p. 266). The bankruptcy court further held that, since there was no evidence that the Charleses' proofs of claim were for a governmental unit, the Charleses' deadline to file the proofs of claim had passed on December 9, 2020. (Dkt. 2 at p. 266).

The Charleses filed a motion under Federal Rule of Civil Procedure 59(e) in which they asked the bankruptcy court to reverse its decision and overrule UCB's objection. (Dkt. 2 at pp. 268–307). In support of that request, the Charleses contended that Great Lakes met

the definition of "governmental unit" contained in 11 U.S.C. § 101(27) because, "[a]lthough these loans are being serviced by . . . Great Lakes, this was being done on behalf of, and as the agent of, the Department of Education." (Dkt. 2 at pp. 271–72). As evidence supporting their Rule 59(e) motion, the Charleses attached Natasha's loan applications and printouts from the websites of the Department of Education's Federal Student Aid office and of Great Lakes. (Dkt. 2 at pp. 300–07). The bankruptcy court denied the Charleses' motion, reasoning that:

> Great Lakes is a non-profit institution. It is a student loan servicer and does not own the student loans it services. The [Charleses] agree that it is only a servicer, and state in the [Rule 59(e)] Motion that "Great Lakes was servicing the loan" made by the "United States Department of Education." Other lenders, including banks and the U.S. Department of Education, own the loans which Great Lakes services. Great Lakes is not owned by the Department of Education and simply contracts with it for loan servicing. Other than privity of contract it is not affiliated with any governmental agency.
>
> Therefore, Great Lakes is not a governmental agency for the purposes of filing a proof of claim, any more than any entity that contracts with a state, local or federal governmental agency to service debts is a governmental agency. The [Charleses'] interpretation of governmental agency would greatly expand the definition of this term beyond its logical meaning for the filing of proofs of claim.
> Dkt. 2 at p. 381.

The Charleses appealed to this Court. (Dkt. 1).

## II.    LEGAL STANDARDS

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court

reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). "A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The Fifth Circuit has emphasized that, under the "clearly erroneous" standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 309 (quotation marks omitted).

To the extent that the bankruptcy court's decision rests on equitable considerations, the Court reviews the bankruptcy judge's decision for an abuse of discretion. *In re Kolstad*, 928 F.2d 171, 173 (5th Cir. 1991) (reviewing equitable allowance of amendments to proof of claim under the abuse of discretion standard). "A Bankruptcy Court does not abuse its discretion unless its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quotation marks omitted). Here, the parties agree that the abuse-of-discretion standard is appropriate. (Dkt. 4 at p. 10; Dkt. 6 at p. 13).

### III.    ANALYSIS

The Court concludes that the bankruptcy court did not abuse its discretion.[1] The overarching issue presented by this appeal is whether Great Lakes qualifies as a "governmental unit" as defined in 11 U.S.C. § 101(27). The statute defines "governmental unit" as follows:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.
> 11 U.S.C. § 101(27).

The Charleses argue that Great Lakes qualifies as an "instrumentality of the United States" or, in the alternative, was acting as an agent of the Department of Education. (Dkt. 4 at p. 9). On this record, the bankruptcy court did not abuse its discretion in rejecting these arguments.

*—Instrumentalities of the United States*

"Instrumentality jurisprudence has never been characterized by particular clarity." *Fasano v. Federal Reserve Bank of New York*, 457 F.3d 274, 282 (3d Cir. 2006). "There is no bright line rule or specific test to determine if an entity is a federal instrumentality[,]" so "[c]ourts . . . have looked to a variety of factors to make this determination." *Mount Olivet Cemetery Association v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998)

---

[1] To the extent that this appeal is more properly framed as an attack solely on the bankruptcy court's determination that Great Lakes is not a governmental unit, the Court also concludes that this record contains no basis for reversing the bankruptcy court under either the *de novo* or clearly-erroneous standards of review.

(collecting cases). "Such factors often depend upon the context, including whether the particular entity performs an important governmental function; whether the federal government owns the entity or is entitled to its profits and is liable for its losses; whether the federal government supports the entity with financial aid; whether the federal government appoints officers of the entity or controls its operations; whether the entity is a for profit corporation that engages in commercial activities; whether the entity is subject to extensive government regulation; and whether the entity is exempt from federal tax." *In re Marquez*, No. 19-10284, 2020 WL 5823272, at *2 & nn. 6, 7 (Bankr. D.N.M. Sept. 30, 2020) (collecting cases).

The record here contains very little evidence from which one can examine Great Lakes through the prism of the factors discussed in the caselaw. One can divine, as the bankruptcy court did, that Great Lakes has a contractual relationship with the Department of Education whereby Great Lakes services student loans. However, there is no evidence in the record showing that the Department of Education owns Great Lakes, provides Great Lakes with financial support, controls Great Lakes's operations, regulates Great Lakes extensively, or has any meaningful connection with Great Lakes beyond the servicing contract. There is certainly no evidence indicating that Great Lakes is "virtually . . . an arm of the Government" like, for instance, the American Red Cross. *Cf. Department of Employment v. United States*, 385 U.S. 355, 359–61 (1966) (detailing evidence showing that the Red Cross was chartered by Congress; that it was subjected to governmental supervision and regular financial audits by the Department of Defense; that its obligations were set by statute and executive order; that its principal officer and seven of its remaining

49 governors were appointed by the President; and that it received substantial material assistance from the federal government) ("Although there is no simple test for ascertaining whether an institution is so closely r[e]lated to governmental activity as to become a tax-immune instrumentality, the Red Cross is clearly such an instrumentality."). !!

Moreover, the bankruptcy court, drawing on the *Marquez* court's analysis, noted that the determination of whether Great Lakes should be considered an instrumentality of the federal government under these circumstances must be made with the purposes of claims bar deadlines in mind. Generally speaking, claims bar deadlines exist "to provide the debtor and its creditors with finality and to insure the swift distribution of the bankruptcy estate." *Marquez*, 2020 WL 5823272 at \*5 (quotation marks omitted). But Congress fixed a more lenient deadline for governmental units than for other creditors; in doing so, "Congress was motivated by 'the difficult administrative burden on taxing authorities, especially the Internal Revenue Service, in dealing with a bankrupt taxpayer and being required to prepare and file a tax claim . . . .'" *Id*. (quoting H.R. Rep. No. 95-595 at 351 (1977)). There is no evidence in the record bearing on whether treating Great Lakes as an instrumentality of the federal government strikes a desirable balance between finality and expeditiousness, on the one hand, and the accommodation of government agencies' difficult administrative burdens, on the other. The caselaw makes clear, though, that as the loan servicer Great Lakes has standing on its own to file a proof of claim. *See In re Gulley*, 436 B.R. 878, 892 & n.63 (Bankr. N.D. Tex. 2010) ("[M]any courts have held that a mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of a note. Thus, there is not a per

se rule prohibiting Countrywide, as a servicer, from participating in Mr. Gulley's bankruptcy case and ultimately, filing a proof of claim. Likewise, the court does not think that Countrywide, as the servicer of the Note, would be required to prove that it was JPMorgan's agent in order to file a proof of claim.") (footnote omitted) (collecting cases). On the scant evidentiary record provided here, the fact that Great Lakes, as the loan servicer, has independent standing to file a proof of claim cuts against any argument that giving Great Lakes additional time to file proofs of claim would further the aims of the more lenient deadline for governmental units. Great Lakes is a private entity that can file a proof of claim on its own, and there is no evidence that it faces exceptionally difficult administrative burdens or otherwise requires leniency by dint of its contract with the federal government. The bankruptcy court did not abuse its discretion by concluding that the need for finality and expeditiousness outweighed any benefit that would be created by treating Great Lakes as a governmental unit.

The bankruptcy court did not abuse its discretion in rejecting the Charleses' argument that Great Lakes qualifies as an instrumentality of the United States.

—*Agency*

For largely the same reasons, the bankruptcy court did not abuse its discretion in rejecting the Charleses' argument that Great Lakes was acting as an agent of the Department of Education. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 356–57 (5th Cir. 2003) (quotation marks omitted). Under

general agency law, "[a]n agency relationship may be demonstrated by written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to [a] third party (apparent authority)." *Id*. (quotation marks omitted).

There is no evidence in the record establishing that agency principles could be used to bind the Department of Education to a proof of claim filed by (or, in this case, on behalf of) Great Lakes. The available evidence, as the bankruptcy court explained, establishes that Great Lakes is affiliated with the federal government solely through a contract whereby Great Lakes serviced loans; and the contract between Great Lakes and the Department of Education is not in the record. Even if Great Lakes and the Department of Education could be analogized to related corporations, under general agency law "a mere parent-subsidiary relationship does not create the relation of principal and agent or alter ego between the two." *Zurich American Insurance Co. v. Watts Industries, Inc.*, 417 F.3d 682, 688 (7th Cir. 2005) (quotation marks omitted); *see also Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 777 (2d Cir. 1995) ("As a general matter, . . . a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement.").

The bankruptcy court did not abuse its discretion in rejecting the Charleses' argument that Great Lakes was acting as an agent of the Department of Education.

## IV.    CONCLUSION

The Court **AFFIRMS** the bankruptcy court's judgment.

SIGNED at Houston, Texas, on September 30, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE